1 | TRINETTE G. KENT (State Bar No. 222020)
2 | KENT LAW OFFICES
3 | 10645 North Tatum Blvd., Suite 200-192
  | Phoenix, AZ 85028
4 | Telephone: (480) 247-9644
  | Facsimile: (480) 717-4781
5 | E-mail: tkent@kentlawpc.com

*Attorneys for Plaintiff,*
*Kiet Huynh*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| Kiet Huynh, | Case No.: '16CV2266 W   BGS |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Trans Union LLC, a Delaware limited liability company, and Bank of America, N.A., a national association, | **JURY TRIAL DEMAND** |
| Defendants. | |

1

NOW COMES THE PLAINTIFF, KIET HUYNH, BY AND THROUGH COUNSEL, TRINETTE G. KENT, and for his Complaint against the Defendants, pleads as follows:

## JURISDICTION

1. Jurisdiction of this court arises under 15 U.S.C. §1681p.

2. This is an action brought by a consumer for violation of the Fair Credit Reporting Act (15 U.S.C. §1681, *et seq.* [hereinafter "FCRA"]).

## VENUE

3. The transactions and occurrences which give rise to this action occurred in the City of San Diego, San Diego County, California.

4. Venue is proper in the Southern District of California.

## PARTIES

5. The Defendants to this lawsuit are:

   a. Trans Union, LLC ("Trans Union"), which is a Delaware Limited Liability Company which maintains its registered agent in Chicago Illinois; and

   b. Bank of America, NA. ("BOA"), which is a national association that maintains its offices in Utica, New York.

# **GENERAL ALLEGATIONS**

6. On or about September 11, 2012, Mr. Huynh received a letter from Bank of America, stating that he would receive a full forgiveness of the remaining principal balance of $162,496.29 regarding a Bank of America account with account number 68249007195899 ("Errant Trade Line"). The letter stated that Mr. Huynh's acceptance of the offer was automatic unless it heard from him. It also stated that once it forgave the remaining balance on the account, it would report to the credit bureaus that the account was paid and closed.

7. Mr. Huynh did as the above letter indicated and did not do anything, thus accepting Bank of America's offer.

8. On or about October 29, 2015, Mr. Huynh obtained his Trans Union credit file and noticed that Bank of America reported the Errant Trade Line as a paid charge off.

9. On or about November 12, 2015, Mr. Huynh submitted a letter to Trans Union, disputing the charged off language on the Errant Trade Line.

10. Upon information and belief, Trans Union forwarded Mr. Huynh's consumer dispute to BOA.

11. On or about November 18, 2015, Mr. Huynh received his Trans Union credit file, which showed that Bank of America retained the status of "Account paid in

full; was a charge off." It also showed that Bank of America was reporting multiple charge offs.

12. On or about December 16, 2015, Mr. Huynh filed a lawsuit under the Fair Credit Reporting Act against Experian, Equifax, and BOA for erroneous reporting of the Errant Trade Line.

13. On or about December 21, 2015, Mr. Huynh submitted another letter to Trans Union, disputing the Errant Trade Line. In this letter, he disputed the status of "Was a Charge off." He also disputed the multiple charge offs that Bank of America was reporting under the payment history section of his Trans Union credit file. Mr. Huynh indicated that the multiple charge offs were false, and he again stated that the loan was forgiven. He attached the letter from Bank of America dated September 11, 2012, again confirming the same. Mr. Huynh requested that the status of "Was a Charge Off" be removed from his Trans Union credit file, and he requested that all the charge off language and multiple charge offs be removed from his Trans Union credit file.

14. On or about March 29, 2016, Mr. Huynh obtained his Trans Union credit file. This showed that Bank of America retained the multiple charge offs on the Errant Trade Line. This also showed a remark which stated, "Settled-Less Than Full Balance."

15. In May 2016, Mr. Huynh's case against Bank of America, Experian, and Equifax was settled.

16. On or about May 26, 2016, Mr. Huynh submitted yet another letter to Trans Union, disputing the Errant Trade Line. In this dispute letter, he disputed the status of "Settled-Less Than Full Balance." In this letter, Mr. Huynh stated that he previously filed a lawsuit against Bank of America and he settled it. Per the terms of the settlement, it was required to report the trade line as "Paid in Full." Mr. Huynh indicated that the Settlement Agreement was confidential and that he could not attach it to the dispute letter. He also disputed the multiple charge offs. He asked that Bank of America properly report the Errant Trade as "Paid in Full" and he requested that it remove the multiple charge offs.

17. On or about June 27, 2016, Mr. Huynh received Trans Union's investigation results, which showed that Bank of America retained the status of "Account paid in Full; was a Charge-Off." This further showed that Bank of America was reporting charge offs each month between May 2012 through September 2012 on the Errant Trade Line.

*The Fair Credit Reporting Act and its requirements*

18. There are two types of defendants in this lawsuit. One type of defendant is the credit reporting agencies ("CRAs") which report information about the Plaintiff. The second type of defendant in this case is called a Furnisher in the credit

5

reporting industry.  A Furnisher is a creditor that furnishes its experience with the Plaintiff, to the CRAs.

19. Both the CRAs and Furnishers credit reporting activities are governed by the FCRA.

20. This case involves the Defendants reporting charge offs, month after month ("MCOs") on the Plaintiff's Trans Union credit file.  The reporting of MCOs is inaccurate, incomplete, unclear, and in violation of the FCRA.

21. Charge-offs are treated as an expense or loss to the creditor.  They are referenced in 15 U.S.C. § 1681c of the FCRA.  Under this paragraph, generally speaking, a charge off may not be reported on a trade line that is older than 7 years, beginning upon the expiration of the 180-day period measured from the delinquency which immediately preceded the charge off.  A charge off is a singular, onetime event.  Indeed, the Federal Trade Commission has opined that it was Congress' intent in enacting sections 15 U.S.C. §1681c to establish a single date of the delinquency such as to begin the obsolescence period on charge offs.  Indeed, a plain reading of the statute shows as much.

22. In today's society, the ability to obtain credit largely determines one's lifestyle and housing options. A charge off is a derogatory piece of information that depresses one's credit score and the reporting of which makes it difficult, if not impossible, for the Plaintiff to obtain credit.

6

*Defendant(s) are reporting MCOs*

23. 15 U.S.C. 1692g requires CRAs, upon request, to clearly and accurately disclose all information in a consumer's file.

24. In the case before this court, the Defendants, by reporting MCOs, have failed to make the date of the charge off clear to the Plaintiff and others, including credit grantors. Again, a charge off occurs on a singular date. Without the ability to understand this date from the trade line, it is impossible for the Plaintiff to determine the date that the negative trade line should be removed from the Plaintiff's credit report.

25. The information that the Defendants are providing in their trade lines are neither clear nor accurate for the following reasons:

    a. Because the Status section of the trade line for the Furnisher reports the account status as "charge off" and the payment history grid of these trade lines also reports charge offs, month after month, it appears that the Furnisher is charging off the account again, month after month. There is no legitimate reason for reporting the account as a charge off month after month in the payment history section and in the Status section. It is confusing, unclear, and inaccurate to anyone who receives the Plaintiff's credit report.

7

    b. The Defendant Furnisher's trade line offer the Plaintiff no way to verify when the trade line will be removed from his/her credit report. Plaintiff has no way to predict his/her financial future because these MCO trade line is an impediment to the Plaintiff seeking new credit and do not give the Plaintiff enough information to predict when it will fall off.

    c. The MCOs are confusing or are potentially unclear to judgment lenders such as mortgage lenders and their underwriters. These sorts of lenders look beyond the simple credit score to judge whether a consumer meets the guidelines for a mortgage loan. They review each trade line for content. MCOs are confusing, or potentially confusing, to such mortgage lenders. There is no legitimate business reason for the Defendants to report charge offs, month after month, in a payment grid section of a consumer's credit file when the account has already been tagged in the Status section as a charge off.

26. None of the Defendants, it appears, have firm policies or procedures in place to prevent the reporting of MCOs or to manage their reporting at all.

27. Since the Defendant CRA lack policies and procedures to refrain from reporting MCOs, it is preparing credit reports on the Plaintiff without having adequate policies and procedures in place to assure maximum possible accuracy as required by the FCRA at 15 U.S.C. 1681e(b). Lacking such policies and

procedures, the defendant credit reporting agency is causing great financial and credit damage to the consumer and possibly, for a far longer period than it may legally report. By holding the Plaintiff's credit score under water month after month for an indeterminate time, the Plaintiff's ability to obtain goods, services and credit at reasonable rates, is obliterated. This practice of reporting MCOs is illegal and violated the FCRA.

28. Upon information and belief, all of the defendants favor this MCO policy. Credit reporting is a debt collection activity. The longer that the Defendants can illegally continue to report MCOs on the Plaintiff's credit report, resultantly the longer they can artificially depress the Plaintiff's credit score. The Defendant's apparent goal is to continue holding the Plaintiff's credit score under water for as long as possible, hoping that at some point the Plaintiff will come up gasping for air when he/she has an absolute need for an improve score. When that day comes, the Defendants will hope to get paid.

29. This pattern and practice by the Defendants of reporting MCOs constitutes a willful, or at the very least negligent, violation of the Plaintiff's rights under the FCRA.

30. The damages caused by the reporting of multiple charge offs include angst and emotional distress, financial damage, credit damage, costs, and attorneys' fees.

## COUNT I

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY BOA

31. Plaintiff realleges the above paragraphs as if recited verbatim.

32. After being informed by Trans Union of Mr. Huynh's consumer dispute to the Errant Trade Line, BOA negligently failed to conduct a proper reinvestigation of Mr. Huynh's dispute as required by 15 USC 1681s-2(b).

33. Indeed, BOA was fully aware or should have been aware that its reporting of MCOs in its trade line on the Plaintiff's consumer credit file with Trans Union was not only inaccurate, but also illegal. This Defendant was also fully aware that it was improperly depressing the Plaintiff's credit score, causing great credit harm and damage to his/her ability to obtain credit.

34. Had BOA conducted a reasonable reinvestigation, it would have known that there was no reason for it to report its trade line as a charge off in both the payment history grid and the status section of the Plaintiff's Trans Union credit report.

35. BOA willfully retained the MCOs making its trade line inaccurate, incomplete, and/or unclear.

10

36. By retaining the MCOs and directing Trans Union to do the same, this defendant willfully violated its duties under the FCRA, causing economic and emotional damages to the Plaintiff.

37. BOA negligently failed to review all relevant information available to it and provided by Trans Union in conducting its reinvestigation as required by 15 USC 1681s-2(b).  Specifically, it failed to direct Trans Union to remove the multiple charge offs and the inaccurate status on the Errant Trade Line.

38. The Errant Trade Line is inaccurate and creates a misleading impression on Mr. Huynh's consumer credit file with Trans Union to which it is reporting such trade line.

39. As a direct and proximate cause of BOA's negligent failure to perform its duties under the FCRA, Mr. Huynh has suffered damages, mental anguish, suffering, humiliation, and embarrassment.

40. BOA is liable to Mr. Huynh by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

41. Mr. Huynh has a private right of action to assert claims against BOA arising under 15 USC 1681s-2(b).

**WHEREFORE, PLAINTIFF PRAYS** that this Court grant him a judgment against BOA for damages, costs, interest, and attorneys' fees.

## COUNT II

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY BOA

42. Plaintiff realleges the above paragraphs as if recited verbatim.

43. In the alternative to a Willful Violation of the FCRA, Plaintiff claims that BOA negligently violated his/her rights under this statute.

44. After being informed by Trans Union of Plaintiff's objection to the Defendant's reporting of MCOs, BOA negligently failed to conduct a proper reinvestigation of Plaintiff's dispute as required by 15 USC 1681s-2(b) and to report the results of that investigation to the CRAs.

45. BOA negligently failed to review all relevant information available to it and provided by Trans Union in conducting its reinvestigation as required by 15 USC 1681s-2(b).  Alternatively, BOA negligently failed to conduct a reasonable reinvestigation and failed to report the results of a reasonable reinvestigation to Trans Union.  Specifically, it failed to direct Trans Union to remove the MCOs from its trade line and it failed to update the status of the Errant Trade Line.

46. As a direct and proximate cause of BOA's negligent failure to perform its duties under the FCRA, Plaintiff has suffered credit and financial damages, mental anguish, suffering, humiliation, and embarrassment.

47. BOA is liable to Plaintiff by reason of its violations of the FCRA in an amount to be determined by the trier fact together with reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this Court grant him a judgment against BOA for damages, costs, interest, and attorneys' fees.

## COUNT III

**WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION**

48. Plaintiff realleges the above paragraphs as if recited verbatim.

49. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is defined in 15 USC 1681a.

50. Such reports contained information about the Plaintiff that was false, misleading, and inaccurate.

51. Trans Union negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information it reported to one or

more third parties pertaining to the Plaintiff, in violation of 15 USC 1681e(b). Glaringly missing from a list of policies and procedures are:

a. one that would cause this Defendant to refrain from reporting MCOs as this defendant has;

b. one that would give the Plaintiff an ability to reconcile his records with the information provided in the trade lines that report MCOs that would allow the Plaintiff to predict when an MCO trade line will fall off;

c. one that would provide for clear and accurate reporting of a charge off; there is no sound business reason for this defendant to report MCOs month after month while, at the same time, report the account as a charge off in the Status section of the Plaintiff's consumer credit file. This reporting is inaccurate and unclear.

52. There is no legitimate reason for this defendant to report charge offs, month after month, in the payment grid section of the Plaintiff's consumer credit file when the very same information is present in the Status section of such trade line(s) that contain the MCOs.

53. The reporting of MCOs is unclear and inaccurate to the Plaintiff. Pursuant to 15 U.S.C.1681g, a CRA must clearly and accurately disclose the information in a consumer's credit file. The information contained in the Plaintiff's consumer credit file with this Defendant is neither clear nor accurate. For example, the

14

trade line reporting MCOs provides inaccurate beginning dates of charge off. Plaintiff has calculated the seven year reporting period based on that charge off date and has been unable to confirm when the trade will become obsolete and removed from his credit report. Without the ability to reconcile his records to the date of the charge off, Plaintiff is deprived of the ability to predict when he can apply for new credit and new financial start.

54. Moreover, this Defendant's policies and procedures fail to address the fact that reporting multiple charge offs in both the payment history section and the Status section of the Plaintiff's credit report simultaneously is misleading, confusing, and lacks any legitimate business purpose for either the Furnisher or this CRA.

55. After receiving Plaintiff's consumer dispute to the Errant Trade Line, Trans Union negligently failed to conduct a reasonable investigation as required by 15 U.S.C. 1681i.

56. As a direct and proximate cause of Trans Union's negligent failure to perform its duties under the FCRA, Plaintiff has suffered actual damages, mental anguish and suffering, humiliation, and embarrassment.

57. Trans Union is liable to Plaintiff by reason of its violation of the FCRA in an amount to be determined by the trier fact together with his reasonable attorneys' fees pursuant to 15 USC 1681n.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Trans Union for actual damages, costs, interest, and attorneys' fees.

## COUNT IV

## NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT BY TRANS UNION

58. Plaintiff realleges the above paragraphs as if recited verbatim.

59. Defendant Trans Union prepared, compiled, issued, assembled, transferred, published, and otherwise reproduced consumer reports regarding Plaintiff as that term is defined in 15 USC 1681a.

60. Such reports contained information about Plaintiff, such as the multiple charge offs, that was neither clear nor accurate as required by 15 U.S.C. 1681g(a)(1). The multiple charge offs are inaccurate because they lack a singular origin date by which to measure the 7 year reporting period. They are also inaccurate because they convey to a consumer that an account has been charged off month after month, when in fact, the account has only one charge off date.

61. The multiple charge offs are also unclear, because this CRA has not provided a legend on its credit report to clearly explain that the charge off has a beginning date and what that beginning date is. The credit reports produced by this defendant further fail to make clear when the multiple charge offs **will** come off the credit report and the credit report lacks enough information to allow the

16

Plaintiff to verify these dates even if they were presented on the credit report for the Plaintiff or anyone else to see.

62. Trans Union has produced credit reports and disclosures that were false, misleading, and inaccurate. Indeed, the multiple charge offs, by themselves, are false, misleading, inaccurate, and unclear.

63. Trans Union has negligently failed to maintain and/or follow reasonable procedures to assure maximum possible accuracy of the information that it reported to one or more third parties pertaining to Plaintiff, in violation of 15 USC 1681e(b). Indeed, Trans Union has no policies that prevent the reporting of multiple charge offs, nor does it have any policies that govern how long multiple charge offs, even if legal and proper, may be reported on the Plaintiff's credit report.

64. After receiving Plaintiff's consumer dispute to the Errant Trade Line, Trans Union negligently failed to conduct a reasonable investigation as required by 15 U.S.C. 1681i. Indeed, it merely retained the multiple charge offs, which are illegal, confusing, inaccurate, and unclear.

65. As a direct and proximate cause of Trans Union's negligent failure to perform its duties under the FCRA, Plaintiff has suffered actual credit and financial damages, mental anguish and suffering, humiliation, and embarrassment.

17

66. Due to Trans Union's actions and inactions in connection with its failure to conduct a reasonable reinvestigation, Plaintiff has suffered damages, including but not limited to an artificially and illegally depressed credit score.

67. Trans Union is liable to Plaintiff by reason of its violations of the FCRA in an amount to be determined by the trier of fact together with his reasonable attorneys' fees pursuant to 15 USC 1681o.

**WHEREFORE, PLAINTIFF PRAYS** that this court grant him a judgment against Defendant Trans Union for the greater of statutory or actual damages, plus punitive damages along with costs, interest, and reasonable attorneys' fees.

### JURY DEMAND

Plaintiff hereby demands a trial by Jury.

DATED: September 7, 2016

By: */s/ Trinette G. Kent*
Attorneys for Plaintiff,
Kiet Huynh